# UNITED STATES DISTRICT COURT
## District of Kansas

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                         CASE NO. 18-20025-2-DDC

ALBERT BROWN,

      Defendant.

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
(Docs. 308 and 320)

The United States of America, by and through undersigned counsel, respectfully submits the following response to the defendant's motion for compassionate release.

I.    PROCEDURAL HISTORY

On June 20, 2021, the defendant entered a guilty plea to conspiracy to distribute more than 100 grams of heroin. (Doc. 139, Plea Agrmt. at 1.)

On February 27, 2020, the defendant was committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 92 months.

1

(Doc. 239, Judgment at 2.)

DEFENDANT: Albert Brown
CASE NUMBER: 2:18CR20025 - 002

Judgment – Page 2 of 7

**IMPRISONMENT**

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 92 months.

On April 26, 2021, the defendant filed the instant motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (Doc. 308, Mot. for Release.) On May 17, 2021, the Court ordered the defendant to show cause that he had exhausted his administrative remedies and whether he had been offered the COVID-19 vaccine. (Doc. 311, Notice and Order to Show Cause.) On June 10, 2021, the defendant responded to the show cause order. (Doc. 320, Def. Resp. Show Cause.)

The defendant's projected good time release date from BOP is October 27, 2024. (*Id*. at 4; https://www.bop.gov/inmateloc/ (last visited July 3, 2021).)

---

[1] To the extent the defendant seeks release to home-confinement that request must be rejected. Under the CARES Act, Pub. L. 116-136, Mar. 27, 2020, 134 Stat. 281, § 12003(b)(2), this Court has no authority to place the defendant on home-confinement; that responsibility lies exclusively with the Director of the Bureau of Prisons. *United States v. Cumins*, 833 F. App'x 765, 766 (10th Cir. 2021) (noting that home confinement amounts to a designation of the home as the place of imprisonment, a decision that is reserved to the BOP Director).



**ALBERT BROWN**

Register Number: 29193-031

Age: 32
Race: Black
Sex: Male

Located at: Yazoo City Low FCI

Release Date: 10/27/2024

The defendant proposes a sentence reduction to time served, and his release plan is to stay with his wife in Kansas City, Kansas. (Doc. 308 Mot. for Release at 4.)

II. ARGUMENT

The defendant moves this Court for an Order of Compassionate Release on grounds that he suffers from obesity and this condition makes him susceptible to the dangers of COVID-19. (Doc. 308, Mot. for Release at 7-10; Doc. 320, Def. Show Cause Resp. at 1)

The government objects to the defendant's motion for compassionate release and submits the following in support of its position.

A. Defendant's Obligations

The defendant is burdened with demonstrating that circumstances exist warranting this Court's consideration of compassionate release. *See United*

3

*States v. Rodriguez-Orejuela*, 457 F.Supp.3d 1275, 1282 (S.D. Fla. 2020) (noting that under the CARES Act / Section 3582(c) framework the defendant bears the burden of establishing that compassionate release is warranted); *United States v. Holden*, 452 F.Supp.3d 964, 969 (D. Ore. 2020) (noting that "[a] defendant seeking a reduction in his term of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release."); *United States v. Epstein*, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (Slip Op.) ("Simply put, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.").[2]

Here, the defendant falls short of satisfying the requirements for compassionate release under 3582(c)(1)(A)(i). Thus, for the following reasons, this Court must overrule his motion and deny the requested relief.

---

[2] The defendant must also establish that he has a valid release plan in place. *See United States v. Allison*, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020) ("An appropriate release plan is essential to ensure that a defendant actually has a safe place to live and access to health care in these difficult times. Shortening a defendant's sentence where there is no adequate release plan offers no benefit to the health of the inmate and in the process likely further endangers the community into which the defendant is release.")

B.  BOP's Response to the COVID-19 Pandemic[3]

As this Court is well-aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time resulting in disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.[4]

The Department of Justice has, consistent with the Centers for Disease Control (CDC), identified certain risk factors that place inmates at higher risk of complications from COVID-19.[5] Thus, an inmate that presents with one of the

---

[3] It should again be noted that BOP continues to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors—particularly those at institutions where there have been COVID-19 outbreaks—and BOP is devoting all available resources to executing on that directive. Additionally, BOP is devoting all available resources to assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program and to then process those inmates for transfer as quickly as possible.

[4] Importantly, the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. As the Third Circuit held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Thus, to classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, *not* the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

[5] The factors include the following: asthma (moderate to severe); cancer; chronic kidney

named CDC factors, as confirmed by medical records, and who is not expected to recover from that condition, is deemed to have established an extraordinary and compelling reason allowing for consideration of compassionate release under Section 3582(c)(1)(A).  As noted by the Sentencing Commission, a specified and confirmed chronic medical condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death resulting from COVID-19 is substantially diminished, within the environment of the corrections facility, by the chronic condition itself.  To that same end, a defendant's medical condition "must be one of substantial severity and irremediability."  *United States v. Lisi*, 440 F.Supp.3d 246, 251 (S.D.N.Y. 2020); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare"

---

disease; chronic lung disease, such as chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis, and cystic fibrosis; diabetes, including type 1, type 2, or gestational; hemoglobin disorders, such as sickle cell disease and thalassemia; immunocompromised, including from cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count or not on HIV treatment, and prolonged use of corticosteroids and other immune weakening medications; liver disease, including cirrhosis; neurologic conditions such as dementia; serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension; and obesity, defined as a body mass index (BMI) of 25 kg/m$^2$ or above.

and "extraordinary"); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (must be extraordinary; "Many inmates suffer from pain and mental illness.")[6]

As of this pleading, BOP has 129,610 federal inmates in BOP-managed institutions and 14,194 in community-based facilities. The BOP staff complement is approximately 36,000. There are 30 federal inmates and 138 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 44,000 inmates and 6,883 staff have recovered. There have been 240 federal inmate deaths and 4 BOP staff member deaths attributed to COVID-19 disease. Of the inmate deaths, 5 occurred while on home confinement.[7]

The defendant is presently incarcerated at FCI Yazoo City Low where there are 1,409 inmates, with 141 at the camp. See

---

[6] That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." *See* Centers for Disease Control, *At Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated on March 15, 2021). Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. See, e.g., U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

[7] https://www.bop.gov/coronavirus/ (last visited July 3, 2021).

https://www.bop.gov/locations/institutions/yaz/ (accessed July 3, 2021). According to BOP statistics, https://www.bop.gov/coronavirus/ (accessed July 3, 2021) (screen shots attached below), that facility currently has only no inmates or staff members who have COVID-19. There have been 3 inmate deaths and no staff deaths. BOP provided full inoculations for 1934 inmates and 360 staff at Yazoo City FCC. Of the more than 115,772 BOP inmates tested, at least 854 tests have been administered to the inmates at Yazoo City Low FCI, with the defendant tested for COVID-19 in July 2020. The medical records do not contain the results of the test, but the medical records also do not indicate the defendant has contracted COVID-19. (See medical records snapshot below.)

| Facility | Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered | City | State |
|---|---|---|---|---|---|---|---|---|
| Yazoo City Low FCI | 0 | 0 | 3 | 0 | 80 | 14 | Yazoo City | MS |

**New Laboratory Requests:**
**Details**                                             **Frequency**     **Due Date**         **Priority**
Lab Tests-C-COVID-19 Asymptomatic Novel    One Time         07/01/2020 00:00    Routine
Coronavirus
        Labs requested to be reviewed by:        Chambers, A. MD, CD

The current modified operations plan for the BOP is stated in full at https://www.bop.gov/coronavirus/covid19_status.jsp. Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic

and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Notably, "the BOP [is] committed to vaccinating all prisoners during the upcoming months." *United States v. Davis*, 2021 WL 1016115, at *3 (S.D.N.Y. Mar. 17, 2021) (quoting *United States v. Maldonado*, 2021 WL 639069, at *3 (S.D.N.Y Feb. 17, 2021). The defendant claims he was never offered the vaccine but would accept it if offered. (Doc. 320, Def. Resp. Show Cause.) A review of the BOP medical records obtained for this response do not indicate whether the defendant has been offered a COVID-19 vaccine. However, if the defendant has in fact been vaccinated against the virus, his arguments are significantly lessened.

While the circuit courts have yet to weigh-in directly on this issue, the lower courts are increasingly aware that a defendant's vaccination will significantly impact the merits of a compassionate release claim. *See, e.g, United States v. Austin*, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) (noting that "[t]he court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen."); *United States v. Del Rosario Martinez*, --- F.Supp.3d ---,

2021 WL 956158, at *3 (S.D. Cal. Mar. 10, 2021) (joining several district courts in holding that a vaccination will significantly mitigate the risk of contracting COVID-19, much less become seriously ill); *United States v. Williams*, 2021 WL 1087692, at *4 (D. Minn. Mar. 22, 2021) (finding speculative the fear that vaccinations will not address COVID-19 variants); *United States v. Watkins*, 2021 WL 1627765, at *2 (W.D. Pa. Apr. 27, 2021) (noting the need not to continue with analysis under Section 3582(c)(1)(A) after confirmation of defendant's vaccination); *United States v. Wiley*, 2021 WL 1669523, at *2 (M.D.N.C. Apr. 28, 2021) (holding that absent a shift in scientific consensus, a vaccination against COVID-19 precludes the argument that a defendant's susceptibility to the disease is "extraordinary and compelling" for purposes of Section 3582(c)(1)(A)).  The government is confident the defendant will inform the Court of his vaccination status in his reply to the government's instant response.

Unfortunately, and inevitably, some inmates have become ill.  But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations.  For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public.  It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.  It must marshal its

resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

### C. Legal Framework

As a general matter, federal courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed; however, this rule is subject to a limited number of narrow exceptions. *Freeman v. United States*, 564 U.S. 522, 526 (2011). Section 3582(c)(1) qualifies as one of these exceptions and now provides that a district court is authorized to grant a motion for reduction of sentence whether filed by the Director of the BOP or upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.

§ 3582(c)(1)(A). Importantly, however, a district court may grant a motion for sentence reduction *only* if the following three requirements are met: (1) there are extraordinary and compelling reasons warranting the reduction; (2) the reduction is consistent with the applicable policy statements issued by the United States Sentencing Commission; and (3) the district court considers the factors set forth in Section 3553(a), to the extent they are applicable. (*Ibid*).

To satisfy the requirements of Section 3582(c)(1)(A), a district court must engage in a three-step process. *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021) (adopting test established in *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) ("Because this three-step test is consistent with the plain language of [Section 3582(c)(1)(A)], we adopt the test for use in this circuit.").

At step one, a district court must find whether extraordinary and compelling reasons warrant a sentence reduction. *McGee*, 992 F.3d at 1043. To that end, "the most plausible interpretation of . . . [Section] 3582(c)(1)(A)(i) is that Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test . . . [and] to independently determine the existence of 'extraordinary and compelling reasons,' and for the discretion to be circumscribed under the second step of the statutory test by requiring district

courts to find that a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id*. at 1044.

At step two, a district court must determine whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. at 1048. As highlighted by the Court in *McGee*, the Sentencing Commission's description of what constitutes "extraordinary and compelling reasons" must be viewed as a "general policy statement" rather than the equivalent of a statutory definition. *Id*. at 1048. As the Court in *McGee* opined:

> . . . in applying the first part of [Section] 3582(c)(1)(A)'s statutory test, [district courts] have the authority to determine for themselves what constitutes "extraordinary and compelling reasons," but that this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to [Sections] 994(a)(2)(C) and (t). In other words, we conclude that Congress did not, by way of [Section] 994(t), intend for the Sentencing Commission to exclusively define the phrase "extraordinary and compelling reasons," but rather for the Sentencing Commission to describe those characteristic[s] or significant qualities or features that typically constitute "extraordinary and compelling reasons," and for those guideposts to serve as part of the general policy statements to be considered by district courts under the second part of the statutory test in [Section] 3582(c)(1)(A).

*Id*. at 1048.[8]

Finally, at step three, a district court must address the applicable factors under Section 3553(a).  *Id*. at 102-43.    Importantly, a district court may deny compassionate release when any of the three prerequisites listed in Section 3582(c)(1)(A) is lacking and need not address the other factors.  *Id* at 1043. (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).   Conversely, when a district court determines that compassionate release is warranted, "it must of course address all three steps."   *Id*. (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

    D.    <u>Argument</u>

Again, the defendant maintains he is a qualified candidate for release on grounds that he suffers from obesity and this condition makes him susceptible to the dangers of COVID-19.  (Doc. 308, Mot. for Release at 7-10; Doc. 320, Def. Show Cause Resp. at 1)

---

[8] Notably, the Court in *McGee* further concluded, consistent with the Second, Fourth, Sixth, and Seventh Circuits, "that the Sentencing Commissions' existing policy statement is applicable *only* to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."   992 F.3d at 1050 (emphasis supplied); *see also Maumau*, 993 F.3d at 836-37 (rejecting the government's position that Section 1B1.13 remains binding on the district court when a defendant files a motion for sentence reduction under Section 3582(c)(1)(A) directly with the district court).

The defendant's medical records indicate he has a height of 69 inches and weight of 274 pounds (see medical records snapshot below), which places his BMI at 40.5, in the obese range. (See https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.) Thus, under the circumstances, the defendant has established extraordinary and compelling reasons pursuant CDC and / or DOJ guidelines allowing for consideration of compassionate release under Section 3582(c)(1)(A).

**Height:**

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 05/14/2020 | 08:40 YAX | 69.0 | 175.3 | Berrios, L. MD |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 05/14/2020 | 08:40 YAX | 274.0 | 124.3 | | Berrios, L. MD |

However, when balanced against the factors below, the defendant's medical conditions, either individually or collectively, fail to demonstrate a situation so severe that early release from his sentence is warranted.

### E. Section 3553(a) Factors

To the extent that a defendant can establish an extraordinary and compelling reason for release based upon a confirmed and documented medical

condition, satisfying that burden does not resolve the defendant's entitlement to a reduction in sentence or release from confinement. This Court must still consider whether the defendant poses a danger to the community and other relevant factors under Section 3553(a) before making the ultimate decision on release. Accordingly, this Court must consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6)).

In this case, the defendant was convicted of conspiracy to distribute more than 100 grams of heroin. The investigation disclosed the defendant, a/k/a "Freeway" sold heroin for the drug trafficking organization. (Doc. 224, Presentence Investigation Report, (PSIR), ¶¶ 1, 14.) During the investigation agents interviewed a source of information who stated that between December 2016 and January 2017, he/she had purchased heroin from the defendant 12-15 times. (*Id*. at ¶ 20.) The defendant was ultimately held accountable for the distribution of 944.5 grams of heroin. (*Id*. at ¶ 106.) The defendant's

sentence was enhanced for possession of firearms and maintaining a premise for distribution of controlled substances. (Id. at ¶ 114.)

Applying the Section 3553 factors to this case weigh against reducing the defendant's sentence to time served. While the defendant may not appear to pose a direct danger to society upon release, he has 39 months remaining of his 92-month sentence. Thus, a reduction to time served would diminish the nature and seriousness of his offense and the need for his sentence to continue to provide just punishment and otherwise promote respect for the law.

### III.  CONCLUSION

For the foregoing reasons, the government respectfully moves this Court to reject the defendant's arguments for compassionate release and asks that his motion be dismissed.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

By:  /s/ *Kim I. Flannigan*

Kim I. Flannigan
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (fax)
Kim.Flannigan@usdoj.gov
Ks S.Ct.No. 13407

## CERTIFICATE OF SERVICE

I certify that on July 6, 2021, I electronically filed this Response with the Clerk of the Court by using the CM/ECF system and that a copy of the same was mailed through the United States Postal Service, first class, postage prepaid to:

Albert Brown
29193-031
YAZOO CITY - FCI - LOW
PO Box 5000
Yazoo City, MS 39194

By:   /s/ *Kim I. Flannigan*
Kim I. Flannigan
Assistant United States Attorney